# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Quantum Energy, Inc.,

      Plaintiff

v.

PCS Advisors LLC and John Suprock,

      Defendants

Case No.: 2:21-cv-02184-JAD-BNW

**Order Granting Motion to Dismiss Quantum Energy, Inc.'s Claims Against PCS Advisors LLC and John Suprock**

[ECF No. 17]

      Nevada corporation Quantum Energy, Inc. contracted with one of its shareholders, South Dakotan John Suprock, and his Montana company PCS Advisors LLC to help Quantum "identify and secure business opportunities."[1]  Suprock received 850,000 shares of Quantum stock as initial consideration with the ability to earn an additional 3% commission from the opportunities that Suprock and PCS would land.[2]  Though the term of the referral deal was ten years, the parties penned a cancellation agreement less than a year into it.[3]  Nearly four years later, Quantum filed this action against Suprock and PCS to claw back those shares under contract and unjust-enrichment theories.  Suprock then filed a separate action against Quantum regarding his ability to sell or transfer these 850,000 shares and thousands more, and the cases were consolidated.[4]

      Suprock and PCS now move to dismiss Quantum's claims, arguing that this court lacks personal jurisdiction over them and that the claims are either insufficiently pled or barred by the cancellation agreement, which now "constitutes the entire agreement between the [p]arties with

---

[1] ECF No. 1 at 2–3 (complaint).

[2] *Id.* at 3–4.

[3] ECF No. 1-7 (cancellation agreement).

[4] ECF No. 1 in Case No. 2:22-cv-00494-JAD-BNW.

respect to" the referral agreement.[5]  I find that Suprock's filing of his own suit subjects him to the jurisdiction to this court but that jurisdiction over PCS is lacking, so I dismiss the claims against PCS for want of personal jurisdiction.  But I also find that Quantum has not pled a plausible claim for unjust enrichment or breach of the implied covenant of good faith and fair dealing and, even if it had, all of Quantum's claims are all barred by the substituted cancellation agreement.[6]  So I dismiss Quantum's claims against Suprock, leaving only the claims from the second-filed action, which have been consolidated into this case.[7]

## Discussion

### I.    This court has personal jurisdiction over Suprock but lacks jurisdiction over PCS.

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts,"[8] and Federal Rule of Civil Procedure (FRCP) 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction.  To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[9]  Because Nevada's long-arm statute reaches the constitutional zenith,[10] the question is whether jurisdiction

---

[5] ECF No. 17 at 1–2.  The defendants also argue that all claims against Suprock must be dismissed because he did not sign the referral agreement in his individual capacity and thus cannot be held liable for claims stemming from it.  ECF No. 17 at 11.  Because I grant the motion based on other arguments, I need not and do not reach this one.

[6] Quantum's fourth claim for relief is for "Costs, Expenses, and Attorneys' Fees."  ECF No. 1 at 8.  Because this is not a true claim for relief, but rather a list of remedies that Quantum seeks for claims that I dismiss by this order, this fourth "claim" must also be dismissed.

[7] The court recognizes that disposition motions are pending with respect to these claims and will address those motions in due course.

[8] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[9] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[10] Nev. Rev. Stat. § 14.065.

1    "comports with the limits imposed by federal due process."[11]   A court may only exercise

2    jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum

3    state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

4    substantial justice.'"[12]

5            Quantum does not contend that either PCS or Suprock is subject to general jurisdiction in

6    Nevada and argues instead that specific jurisdiction exists for both.[13]   Specific jurisdiction

7    "focuses on the relationship among the defendant[s], the forum, and the litigation."[14]   This

8    means that "the plaintiff cannot be the only link between the defendant[s] and the forum,"[15] and

9    "[t]he unilateral activity of those who claim some relationship with [the] nonresident

10   defendant[s] cannot satisfy the requirement of contact with the forum [s]tate."[16]   Courts in the

11   Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[17]   The

12   plaintiff bears the burden of satisfying the first two by showing that (1) the defendants

13   "purposefully avail[ed] [themselves] of the privileges of conducting activities in the forum[,]"

14   and (2) the claim "arises out of or relates to the defendants' forum-related activities."[18]   An

15   ────────────────

16   [11] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

     [12] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S.
17   457, 463 (1940)).

     [13] ECF No. 25 at 2–3.

18   [14] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984))
     (internal quotation marks omitted).
19
     [15] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

20   [16] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

21   [17] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d
     1416, 1421 (9th Cir. 1987)).

22   [18] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole
     Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted).
23   Courts generally apply the purposeful-availment test to suits sounding in contract or negligence,
     *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the
     purposeful-direction test to intentional torts.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,

insufficient showing at any prong requires dismissal,[19] but if the plaintiff meets its burden, the defendant can only defeat jurisdiction if it "present[s] a compelling case" that jurisdiction would be unreasonable.[20]

### A.   Suprock purposefully availed himself of this forum by initiating a separate action in this court concerning the 850,000 shares.

"Because the personal[-]jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court."[21]  One way is to purposefully avail oneself of the benefits of the forum as a plaintiff in its courts.  As the Ninth Circuit explained in *Dow Chemical Company v. Calderon*, "personal jurisdiction exists where a defendant also independently seeks affirmative relief in a separate action before the same court concerning the same transaction or occurrence[,]" whether the action takes "place prior to the suit's institution, or at the time suit is brought, or after suit has started."[22]

Quantum argues that Suprock subjected himself to the personal jurisdiction of this court by "prosecuting a lawsuit in this very [c]ourt against Quantum in a matter he claims is related."[23]

---

905 F.3d 597, 606 (9th Cir. 2018).  This lawsuit sounds in contract, so I do not address the purposeful-direction test.

[19] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

[20] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[21] *Dow Chemical Co. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005) (cleaned up) (quoting *Burger King*, 471 U.S. at 472 n.14).

[22] *Calderon*, 422 F.3d at 834 (quoting *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991)).

[23] ECF No. 25 at 3.

Indeed, he is—along with his wife and two companies they manage, Suprock is a plaintiff in *Suprock et al. v. Quantum Energy, Inc., et al.*, which was initiated not as a counterclaim, cross-claim, or third-party claim within Quantum's first-filed action, but as a new and separate case.[24] Suprock notes that "unrelated litigation cannot be a basis for jurisdiction over" him[25] and insists that these two cases are unrelated because his case concerns a "restrictive legend" on 3,400,000 of Quantum stock, and the 850,000 shares in Quantum's complaint are just a fraction of those.[26]

I am unpersuaded by Suprock's characterization of these cases as unrelated. Suprock did not oppose consolidation of the cases, and this court held in granting consolidation that the cases are related,[27] as is necessary for consolidation under FRCP 42 and Local Rule 42-1(b). Both cases involve shares of Quantum stock, including the 850,000 shares that both sides agree Quantum gave to Suprock "as compensation under" the referral agreement.[28] Quantum claims in its suit that the 850,000 shares of Quantum stock that it issued to Suprock and PCS as compensation for performing a referral agreement should come back to Quantum because Suprock and PCS never performed their duties under the agreement.[29] Suprock, in his complaint, seeks the ability to freely transfer these 850,000 shares (and others).[30] Both cases thus plainly relate to the 850,000 shares, making them related to the same transaction or

---

[24] Case No. 2:22-cv-00494-JAD-BNW.

[25] ECF No. 26 at 2 (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993)).

[26] *Id*. at 3.

[27] ECF No. 46.

[28] *Compare* ECF No. 1 at ¶ 20 in Case No. 2:22-cv-00494 (Suprock's complaint), *with* ECF No. 1 at ¶¶ 15, 39–41 in Case No. 2:21-cv-02184 (Quantum's complaint).

[29] ECF No. 1 at 4–6.

[30] ECF No. 1 at 2 in Case No. 2:22-cv-00494.

occurrence.  So I apply the affirmative-relief rule and find that Suprock, by this inception of his own case in this court, has subjected himself to the jurisdiction of this court.

To hold otherwise would result in an "'unjust asymmetry' that occurs with 'allowing a party to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing."[31]  It is thus "inevitable that [Suprock] surrendered any jurisdictional objections to claims that [Quantum] wished to assert against [him] in consequence of the same transaction or arising out of the same nucleus of operative facts."[32]  Suprock is subject to the jurisdiction of this court because he sought affirmative relief by filing suit against Quantum in this forum.

### B.    This court lacks jurisdiction over PCS because PCS did not purposefully avail itself of the benefits of doing business in Nevada.

The same is not true for PCS, which is a separate legal entity and not a party to Suprock's affirmative suit.  So I must employ the three-part test for specific jurisdiction to determine whether to grant PCS's motion to dismiss, starting with the purposeful-availment prong.  Proof of availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."[33]  Courts evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ."[34]  And "although a [contract's] governing[-]law provision standing alone is not sufficient to confer jurisdiction," the Supreme Court has held that it shouldn't be

---

[31] *Calderon*, 422 F.3d at 836 (quoting *Interpole*, 940 F.2d at 23).

[32] *Interpole*, 940 F.2d at 23.

[33] *Id*.

[34] *Burger King*, 471 U.S. at 478.

1  "ignored in considering whether a defendant has purposefully invoked the benefits and

2  protections of a state's laws for jurisdictional purposes."[35]

3        Quantum contends that PCS purposefully availed itself of Nevada law because the

4  referral agreement established a ten-year-long relationship with PCS for the purpose of "finding

5  and aiming persons at Nevada[,]" thus creating "continuing and extensive involvement with the

6  forum."[36]  But both parties agree that PCS's representatives never traveled to Nevada to

7  negotiate, sign, or execute the referral agreement or the cancellation agreement.[37]  And PCS is a

8  Montana limited-liability company with no employees, contractors, property, or other customers

9  in Nevada.[38]  So its only contacts with the state of Nevada are its contracts with Quantum, a

10  Nevada corporation.  And in *Burger King Corporation v. Rudzewicz*, the Supreme Court made

11  clear that a contract "with an out-of-state party *alone* [cannot] automatically establish sufficient

12  minimum contacts in the other party's home forum."[39]

13        Quantum argues that the referral agreement's obligations establish availment because

14  PCS contracted to "perform a service . . . for the purpose of soliciting and aiming potential

15  buyers/purchasers to conduct business in Nevada."[40]  But this reasoning mistakenly focuses not

16  on PCS's direct actions but rather on the business that potential third parties referred by PCS

17  might conduct in Nevada.  The court's inquiry is limited to examining contacts that "proximately

18

19

---

20  [35] *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987) (cleaned up).

21  [36] ECF No. 25 at 2 (quoting *Roth v. Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

    [37] ECF No. 17-1 at 4 (Suprock's declaration).

22  [38] *Id.* at 3–4.

23  [39] *Burger King*, 471 U.S. at 478.

    [40] ECF No. 25 at 2.

result from actions by the defendant[s] [themselves].”[41]  In any event, PCS never did perform that service, and no buyers or purchasers were generated from its action, as Quantum alleges in the very opening paragraphs of its complaint that PCS never “introduced a single prospective, qualified individual or entity interested in and capable of purchasing” a Quantum project.[42]

Quantum also suggests that PCS’s use of phones and email to solicit business “can be sufficient for purposeful availment,” relying on the Supreme Court of Nevada’s opinion in *Peccole v. Eighth Judicial District Court* for that proposition.[43]  In *Peccole*, the court held that two Colorado defendants subjected themselves to jurisdiction in Nevada because they “committed a tortious act aimed at a resident of Nevada” by having a Nevada attorney prepare a sales contract, which the court considered as “the provision of professional services within the forum at the request of a nonresident defendant.”[44]  The court noted that “it is not necessary for a defendant to physically enter the forum; use of the telephone can be sufficient for purposeful availment.”[45]  But unlike the defendant in *Peccole*, PCS did not request any professional services to be rendered in Nevada for either the preparation of the contract or performance under it.  And while telephone and email communications can serve as the basis for personal jurisdiction over a nonresident defendant, they are insufficient on their own to show purposeful availment,

---

[41] *Picot v. Weston*, 780 F.3d 1206, 1212–13 (9th Cir. 2015) (quoting *Burger King*, 471 U.S. at 475).

[42] ECF No. 1 at 2.

[43] ECF No. 25 at 3 (quoting *Peccole v. Eighth Jud. Dist. Ct.*, 899 P.2d 568 (Nev. 1995) (internal quotation omitted)).

[44] *Peccole*, 899 P.2d at 570.

[45] *Id.* (quoting *Burger King*, 471 U.S. at 481).

especially when—as here—the contracts serve as the only contacts between the defendant and the forum.[46]

The facts of this case are more comparable to the Ninth Circuit case of *Picot v. Weston*.[47] In *Picot*, a California plaintiff sued a Michigan defendant over an oral agreement in which the defendant was obligated to "develop . . . technology, arrange for its testing, and assist in fund-raising and marketing" in exchange for "a one-third interest in any profits from the sale of the technology, $20,000 per month, and reimbursement of his expenses . . . ."[48]  The Ninth Circuit held that the defendant did not have sufficient minimum contacts with California to subject him to personal jurisdiction there because the contract was formed in Michigan and "the bulk of [the defendant's] efforts . . . were centered in Michigan," so his contacts with California were at most merely "random, fortuitous, or attenuated."[49]

Similarly, PCS was tasked with performing development duties for Quantum in exchange for 850,000 shares of stock and the ability to earn commission.[50]  No PCS representatives traveled to Nevada to sign the contract, the contract had a Montana governing-law provision,[51] and all of PCS's contemplated work could be performed outside of Nevada.[52]  Given these

---

[46] *Burger King*, 471 U.S. at 478.

[47] *Picot*, 780 F.3d at 1206.

[48] *Id.* at 1212.

[49] *Id.* at 1213 (quoting *Burger King*, 471 U.S. at 475).  The court also noted that the defendant met with possible purchasers in Michigan and Ohio and that all meetings between the parties occurred in Michigan.

[50] ECF No. 1 at 2 (complaint); ECF No. 1-4 at 1 (referral agreement).

[51] ECF No. 1-4 at 3, § 8.6.

[52] ECF No. 17-1 ("Neither [Suprock], nor the other member of PCS, ever travelled to Nevada with respect to the [r]eferral [a]greement or the February 28, 2018[,] [c]ancellation [a]greement, including with respect to negotiations for said agreements or to sign them").

9

1   similarities, I apply the Ninth Circuit's reasoning in *Picot* and find that PCS's contacts are too

2   "random, fortuitous, or attenuated"[53] to subject it to personal jurisdiction in Nevada.[54]  So I

3   dismiss Quantum's claims against PCS for want of personal jurisdiction.

4

5   **II.     Quantum's claims against John Suprock must be dismissed without leave.**

       **A.     Quantum's breach-of-contract claim is barred because the cancellation**
6              **agreement was a novation of the referral agreement.**

7          Having rejected Suprock's personal-jurisdiction challenge, I turn to his other bases for

8   dismissal, starting with his argument that Quantum's claims are barred by the cancellation

9   agreement, which, by the language of its integration clause, acts as a substituted contract for the

10  referral agreement.  To prevail on a breach-of-contract claim under Nevada law, the plaintiff

11  must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as

12  a result of the breach.[55]  As the Nevada Supreme Court has explained, the plaintiff generally has

13

14  [53] *Picot*, 780 F.3d. at 1213.  Quantum also argues that, at the time of contracting, it believed that
    defendant Suprock had formed five companies in Nevada and thus that it believed it was
15  "entering into a business transaction with a party with ties to Nevada."  *Id.*  Such a belief doesn't
    create jurisdiction.

16  [54] Although not dispositive, I also consider that the referral agreement provides that Montana law
    governs, further supporting that this court lacks personal jurisdiction over PCS.  *See Burger*
17  *King*, 471 U.S. at 482 (holding that a choice-of-law provision shouldn't be "ignored in
    considering whether a defendant has purposefully invoked the benefits and protections of a
18  state's laws for jurisdictional purposes.").

19  [55] *Richardson v. Jones*, 1 Nev. 405 (1865).  In its motion to dismiss, PCS applies Nevada law to
    its contract claims while also citing Michigan, Montana, and New York cases.  Quantum does not
20  appear to object by also citing Nevada law but also cites Montana and Illinois cases.  Though the
    referral agreement includes a Montana-law provision, the cancellation agreement doesn't specify
21  which law governs.  Because all parties rely on Nevada law, I apply it to the entire contract-
    claims analysis.  I further note that, on the issue of breach of contract, Nevada and Montana law
22  are consistent.  *Compare Saini v. Int'l Game Tech.,* 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006)
    (citing *Richardson*, 1 Nev. at 405), with *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 859
23  (Mont. 2022) ("The essential elements of a breach of contract claim are: (1) a valid and
    enforceable contract; (2) breach of an express or implied contract duty or obligation; and (3)
    resulting contract damages.").

the burden of pleading and proving that it fulfilled conditions precedent in order to recover on a breach-of-contract claim.[56]  "[A]bsent some countervailing reason, contracts will be construed from the written language and enforced as written."[57]

Suprock argues that the cancellation agreement was fully integrated, clearly covers the same subject matter as the referral agreement (the 850,000 shares), and thus bars Quantum's claims for breach of the referral agreement.[58]  Quantum responds that the subject matter only regards termination of the parties' relationship, so whether the cancellation agreement covers the breach-of-contract claims that accrued prior to the cancellation agreement is ambiguous, making dismissal improper at this stage.[59]

Though the parties dispute the subject matter of the cancellation agreement's integration clause, this is a question of novation.  "[The] substitution of a new obligation for an existing one[] effects a novation, which thereby discharges the parties from all of their obligations under the former agreement . . . ."[60]  Under Nevada law, "all substituted contracts are novations[,]"[61] and novation can "occur after the breach of the parties' original agreement."[62]  There are four elements of a novation: "(1) there must be an existing[,] valid contract; (2) all parties must agree

---

[56] *Clark Cnty. School Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 95, n. 21 (Nev. 2007) (citing NRCP 9(c) and *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 20–23 (1st Cir. 2001).

[57] *Ellison v. California State Auto. Ass'n*, 797 P.2d 975 (Nev. 1990).

[58] ECF No. 17 at 7; ECF No. 26 at 4.

[59] ECF No. 25 at 4.

[60] *Williams v. Crusader Disc. Corp.*, 334 P.2d 843, 845 (Nev. 1959).

[61] *Lazovich & Lazovich, Inc. v. Harding*, 470 P.2d 125, 127 (Nev. 1970).

[62] *Williams*, 334 P.2d at 846 ("Where, after breach of contract, . . . [the parties] enter into a new contract . . . upon terms different from those imposed by the original agreement . . . the new obligation becomes the exclusive medium by which the rights of the parties . . . are to be ascertained.").

11

to a new contract; (3) the new contract must extinguish the old contract; and (4) the new contract must be valid."[63]  All four elements are required for novation to occur, and "the intent of all parties to cause a novation must be clear."[64]

Neither party argues that the referral agreement or cancellation agreement is invalid, and both agree that they signed the cancellation agreement, indicating mutual assent.  The dispositive element is thus whether the new contract extinguished the old contract.  The cancellation agreement's integration clause provides that "[t]he [p]arties agree that this [a]greement constitutes the entire agreement between the [p]arties with respect to the subject matter hereof, and as to their previous relationship and previous dealings in general, and supersedes all prior agreements and understandings, oral or written, between the parties related [to] their relationship and dealings."[65]

This text makes it clear that the cancellation agreement was meant to extinguish the referral agreement in its entirety.  In *Malanca v. Falstaff Brewing Company*, the Ninth Circuit found that intent to extinguish an earlier contract may be found where "the second agreement was inconsistent with the first . . . and provided essential information as to terms omitted from the first agreement.[66]  In the cancellation agreement, Quantum and the defendants expressly cancelled the referral agreement and agreed that "no [c]omission or other compensation is due and owing to PCS Advisors and that the [s]hares issued to PCS Advisors constitute all of the compensation payable to PCS Advisors pursuant to the [r]eferral [a]greement."[67]  And the

---

[63] *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 195 (Nev. 1989).

[64] *Id.*

[65] ECF No. 1-7 at 1.

[66] *Malanca v. Falstaff Brewing Co.*, 694 F.2d 192 (9th Cir. 1982).

[67] *Id.*

integration clause states that the cancellation agreement supersedes all prior agreements relating to its subject matter as well as *their previous relationship and previous dealings in general*.  This language is inconsistent with the referral agreement as to the term of the relationship and compensation due and adds essential information omitted from the referral agreement: that the cancellation agreement now supersedes all prior agreements and understandings between the parties.[68]  Quantum's breach-of-contract claim is thus "instantly discharged" because the cancellation agreement extinguishes the referral agreement, and the parties' intent to effect a novation is clear.[69]

Quantum argues that more than mere overlap of subject matter is needed for the cancellation agreement to extinguish the referral agreement.[70]  To support this contention, it cites the California Court of Appeal's decision in *Oxford Preparatory Academy v. Edlighten Learning Solutions*.[71]  In that case, the court found that an integrated termination agreement did not waive an arbitration clause in a prior agreement because "the 'subject matter' of the [t]ermination [a]greement was the parties' mutual consent to allow them to *cease performance*[,]" and the integrated agreement was silent as to arbitration or any "right[s] or obligation[s] of either party arising prior to [termination]."[72]  But here, unlike in *Oxford Preparatory*, there is explicit language in the cancellation agreement covering the compensation at the heart of this dispute, and the cancellation agreement's plain language effects a novation because it substitutes any

---

[68] ECF No. 1-7 at 1.

[69] *Lazovich*, 470 P.2d at 127 (holding that existing claims are "instantly discharged by the substitution of a new executory agreement" even if the prior claim "is a claim to reparation for some prior breach of duty").

[70] ECF No. 25 at 4 (citing 3 Milgrim on Licensing § 28.19 (2002)).

[71] *Oxford Prep. Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605 (2019).

[72] *Id.* at 611.

obligations found in the parties' "previous relationship and previous dealings in general." So I find that Quantum's claim for breach of contract is barred because the cancellation agreement was a novation of the referral agreement. And because this defect cannot be cured by amendment, I dismiss this claim with prejudice and without leave to amend.

### B.    Quantum fails to state a bad-faith claim, and any such claim is barred by the substituted cancellation agreement.

Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract, and a party breaches that covenant when it acts in bad faith.[73] "The implied covenants of good faith and fair dealing impose a burden that requires each party to a contract to refrain from doing anything to injure the right of the other to receive the benefits of the agreement."[74] To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied.[75] So, to state a plausible bad-faith claim here, Quantum must plead facts showing that Suprock complied with the express terms of the contract but "deliberately contravene[d] the intention and spirit of the contract."[76]

---

[73] *A.C. Shaw Constr. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989); *Ainsworth v. Combined Ins.*, 763 P.2d 673, 676 (Nev. 1988).

[74] *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) (quotation omitted).

[75] *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)).

[76] *Hilton Hotels*, 808 P.2d at 922–23.

But Quantum alleges a violation of only the express terms of the referral agreement in its complaint and thus has not properly stated a claim for breach of the implied covenant.[77] Quantum argues that its claim is sufficiently pled because the duty of good faith and fair dealing requires parties' discretion to be exercised in a reasonable manner, and it alleges that the defendants did not do so because they failed to arrange meetings with potential partners.[78] But Quantum did not plead such facts in its complaint.  Instead, for both its breach-of-contract claim and its bad-faith claim, Quantum pled only that Suprock breached the referral agreement "by failing to introduce a single [q]ualified [p]artner to [Quantum] and/or arrange even a single meeting with a [q]ualified [p]artner for the purpose of purchasing a [Quantum] business project."[79]  So Quantum has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

Even if Quantum had pled such facts, however, this claim would still be subject to dismissal because it arises out of the referral agreement that was novated by the cancellation agreement.  That cancellation agreement "constitutes the entire agreement between the [p]arties with respect to" the referral agreement in which the allegedly breached covenant was implied "and supersedes all prior agreements and understandings, oral or written, between the parties related to their relationship and dealings."[80]  So any claim arising out of the referral agreement is barred.  And although FRCP 15(a)(2) directs that "[t]he court should freely give leave when

---

[77] ECF No. 17 at 8–9.

[78] ECF No. 25 at 6; ECF No. 1 at ¶ 35.

[79] ECF No. 1 at ¶ 31 (breach-of-contract claim), ¶ 35 (good-faith-and-fair-dealing claim).

[80] ECF No. 1-7 at 1.  This cancellation agreement is attached to and incorporated into Quantum's complaint, so I consider its language and effect in deciding this motion to dismiss and without transforming this motion into one for summary judgment.

1 justice so requires," leave to amend may be denied if the proposed amendment is futile—and it

2 would be here.[81]   I thus dismiss this bad-faith claim with prejudice and without leave to amend.

3

### C.      Quantum cannot state an unjust-enrichment claim because the parties have an express contract.

4

5 Under Nevada law, "[u]njust enrichment occurs whenever a person has and retains a

6 benefit [that] in equity and good conscience belongs to another."[82]   But "an unjust enrichment

7 claim cannot lie where an express written contract exists 'because no agreement can be implied

8 when there is express agreement.'"[83]   Quantum argues that it can assert this unjust-enrichment

9 claim simultaneously with its breach-of-contract claim because it can plead alternative theories

10 under FRCP 8(d)(2).[84]   It theorizes that a contract existed and was breached while also

11 maintaining that the contract did not exist because it was rendered void *ab initio* due to the

12 integrated cancellation agreement.[85]   But, as Suprock points out, the cancellation agreement

13 didn't render the referral agreement void *ab initio*—it just superseded it.[86]   So Quantum's unjust-

14 enrichment claim still arises out of an express written contract and thus fails as a matter of law.

15 Regardless, this claim, too, is barred by the cancellation agreement, which supersedes not just the

16 referral agreement but "all prior . . . *understandings*, oral or written, between the parties related

17

18

---

[81] *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

[82] *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (quoting *Nevada Indus. Dev. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)).

[83] *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182 (Nev. 1997).

[84] Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

[85] ECF No. 25 at 6–7.

[86] ECF No. 26 7; ECF No. 1-7 at 1 (emphasis added).

[to] their relationship and dealings."[87]  So I dismiss Quantum's unjust-enrichment claim with prejudice and without leave to amend because amendment would be futile.

### Conclusion

IT IS THEREFORE ORDERED that PCS Advisors and John Suprock's motion to dismiss Quantum's claims against it in the base case **[ECF No. 17] is GRANTED**, and **Quantum's claims against these defendants are dismissed with prejudice and without leave to amend.**  The Clerk of Court is directed to **TERMINATE Quantum as a plaintiff and PCS Advisors and John Suprock as defendants.**  This consolidated case proceeds only on the claims that were originally pled in the consolidated case 2:22-cv-00494-JAD-BNW.

_____
U.S. District Judge Jennifer A. Dorsey
January 23, 2023

---

[87] ECF No. 1-7 at 1 (emphasis added).